MAX N. TOBIAS, JR., Judge.
hOn 6 March 1992, the state of Louisiana charged Darrell Ambeau (“Ambeau”) by bill of information with one count of violating La. R.S. 14:64, armed robbery, and one count of violating La. R.S. 14(27)64, attempted armed robbery. On 13 March 1992, Ambeau appeared before the trial court for arraignment and pled not guilty to both charges. On 7 April 1992, the trial court heard the defendant’s motion to suppress and held a preliminary hearing. At the close of the hearings the trial court denied the defendant’s motion and found sufficient probable cause to substantiate the charges brought against him by the state.
On 27 April 1992, the state brought its case against Ambeau to trial. Ambeau waived the jury and elected to have his case tried before the trial judge. The state introduced two exhibits and presented testimony from three individuals. After the close of evidence, the trial judge found Ambeau guilty on both counts. The trial court sentenced Ambeau on 14 May 1992 to fifty years for the armed robbery conviction and twenty-five years for the attempted armed robbery [ ^conviction. The sentences were to run concurrently and both were at hard labor without the benefit of probation, parole, or suspension of sentence. We cannot determine from the record before us whether Ambeau’s counsel objected to the sentences, or made an oral motion to reconsider, because the record does not contain the transcript of the sentencing hearing. Further, the minute entry for 14 May 1992 is so faded as to be substantially illegible. The docket master notes no objections or motions from the defendant. However, a comparison of the docket master with the remainder of the record reveals that it fails to record any of the defendant’s in-court objections. Therefore, the docket master entries do not fully reflect what happened in open court or even the contents of the individual minute entries.[1]
On 11 September 1992, the trial court adjudicated Ambeau a third-time felony offender as to the armed robbery conviction only. Ambeau was then resentenced to serve sixty-six and two-thirds years at hard labor without the benefit of parole. As with the minute entry for 14 May 1992, the entry for 11 September 1992 is largely illegible. However, examination of the entry shows that it contains information not included in the docket master summary. Accordingly, we cannot tell from the rec *56 ord before us whether Ambeau’s counsel made any objections to the state’s evidence or to the trial court’s sentence. Nevertheless, the record contains no written response to the multiple bill as required by La. R.S. 15:529.1(D)(l)(b).
| SNeither the record nor any of the legible minute entries indicates that Ambeau moved for an appeal. Ambeau contends that he moved for an out-of-time appeal, the appointment of new counsel, and for the production of trial documents on 24 July 1994. Nevertheless, the record is devoid of this purported motion. On 1 September 1994, Ambeau filed a writ of mandamus (number 94-K-1744 on the docket of this court) with this court complaining that the trial court failed to rule on his motions. On 10 November 1994, this court transferred the defendant’s motion to the trial court for consideration within thirty days of the order. This court in connection with writ 95-K-0823 issued a second order reiterating the order issued in connection with writ 94-K-1744. On 17 August 1995, the trial court granted Am-beau’s motion for an out-of-time appeal. However, this court never received notice of Ambeau’s appeal.
In writ 2001-K-1677, Ambeau sought to have the trial court’s judgment granting his out-of-time appeal enforced. He also sought to dismiss his retained counsel and have new counsel appointed. The docket master reflects that on 28 April 1997, the trial court allowed Ambeau’s retained counsel to voluntarily withdraw from the case. However, prior to withdrawing, Am-beau’s counsel filed an application for post-conviction relief. Because the record had not been made available for review, the claims raised by Ambeau’s counsel are unknown.[2] Therefore, it is possible that Am-beau had since waived his right to an appeal. In light of these circumstances, the writ was granted and the trial court was ordered to enforce its judgment unless it specifically found that Ambeau waived his right to an appeal. If it found that Ambeau had not waived his right to an appeal, the ^district court was ordered to appoint counsel and file a notice of appeal in this court within sixty days of the order. Alternatively, if the trial court found that Ambeau had waived his right to an appeal, it was ordered to file a minute entry in this court within sixty days of the order reflecting its findings.
In writ 2004-K-1744 Ambeau asserted that the trial court failed to comply with this court’s prior orders. The writ was granted and the trial court was ordered to enforce its judgment unless it specifically found that Ambeau waived his right to an appeal. If it found that Ambeau had not waived his right to an appeal, the district court was ordered to appoint counsel and file a notice of appeal in this court within thirty days of the order. Alternatively, if it found that Ambeau had waived his right to an appeal, the trial court was ordered to file a minute entry reflecting its findings in this court within thirty days of the order.
Ambeau’s notice of appeal was filed in the trial court on 20 January 2005. The trial court appointed the Louisiana Appellate Project to act as Ambeau’s appeal counsel. On 2 May 1995, the trial court wrote a letter to this court wherein it stated that the transcript from Ambeau’s 14 May 1992 multiple offender hearing could not be located. Specifically, the trial court’s letter states that the pertinent court reporter could find no notes or transcripts for the 14 May 1992 hearing.

*57
STATEMENT OF FACTS

The record shows that Ambeau was convicted for crimes involving two victims. The first victim to testify, Lisa Ford (“Ford”), stated that on 10 February 1992, she and Sheila Gains (“Gains”) were walking on the Thalia Courtway in the vicinity of South Galvez and Thalia Streets in New Orleans, Louisiana, between 10:00 and 11:00 p.m. Ford testified that as they walked on the sidewalk up the | scourtway she noticed a group of men outside. Ford stated that she knew the men and told Gains that they could go up the courtway. It was at this point that the incident at issue transpired. Ford described the incident accordingly:
And, as we walking, the guy walked up to us and said, “Are you looking for anything?” And, we said, “No.” And, he said okay, and he turned his back to us, and then he turned right back around, and when he turned right back around, he stuck the gun in my face. He said, “Give me whatever you all have. Give me what you got.” And, it was so close to the end of the building to where I had a chance to run around the building, and Ms. Gains was getting ready to. run, but when she ran be [sic] it was raining outside she tripped and fell. And, when she fell like she tripped, that’s when he pulled her back, and I made it around to the other side of the building. And, I looked up at him and her, down where she was taking all her stuff and giving it to him, the jacket, and so I went for help. And, when I came back she was running up the courtway crying.
Further, Ford identified Ambeau in court as her assailant and noted that prior to the incident she had known him for approximately fifteen years. Following the incident, Ford and Gains went to Gains’ house. Because Gains’ home lacked a telephone, and fearing retaliation from Ambeau, Gains and Ford did not call the police immediately after the incident. Rather, Gains and Ford called the police the following morning. The police did not come out to the scene of the crime. Rather, the police gave Gains and Ford an incident number and asked them to call in the event they saw Ambeau again. Gains and Ford saw Ambeau the following day, called the police, and gave a description of the clothes that Ambeau was wearing at the time. Ford testified that Ambeau was wearing a pair of blue jeans and a “green, turquoise green like shirt with a stripe going across his chest.” Ford also stated that she told the police what Ambeau was wearing at the time of the incident. Specifically, Ford testified that at the time of the incident Ambeau was wearing blue jeans and a light, cream-colored windbreaker.
1 ^Later the police arrested Ambeau and took him before Gains and Ford so that they could attempt to identify him. Ford testified that when the police arrived she and Gains again described the clothes that Ambeau .was wearing at the time they spotted him. The police then took Am-beau out of their car and asked Gains and Ford if they could identify him. Ford identified Ambeau as the assailant from the 10 February 1992 incident. In court, Ford further identified State Exhibit One as the clothes worn by Ambeau at the time of the post-incident identification. Ford also identified State Exhibit Two as the ring and anchor pendant taken from Gains by Ambeau and recovered by the police.
At trial, Gains testified that on the date of the incident she was walking with Ford on the Thalia Courtway at approximately ten-thirty or eleven p.m. She testified that she turned around when she heard Ford say “Oh, Lord!”, and then saw a gun in her face. Gains testified that Ford grabbed her and that she tried to run. However, *58 Gains slipped on the wet ground. The assailant then took Gains’ coat, a ring, two chains, and an anchor. Gains identified Ambeau in court as her assailant and noted that she knew him from around the project. Additionally, Gains identified State Exhibit Two as the ring and anchor pendant taken from her by Ambeau on the night of the incident.
Like Ford, Gains testified that she did not call the police on the night of the incident because she was afraid and unable to get to a phone. Like Ford, Gains also testified that they called the police the next day. According to Gains, the police told her to call them back if ever they should see Ambeau again. Gains testified that she and Ford spotted Ambeau the next day in the courtway. Gains stated that she and Ford then called the police. An officer came to meet them, and Gains and Ford described Ambeau to the officer. The officer then went and found |7Ambeau. After arresting Ambeau, the officer took him back to Gains and Ford for identification. Gains stated that she identified Am-beau as the man who robbed her on the night of the incident.
Clifford Wood, an officer with the New Orleans Police Department, Sixth District, also testified at trial. Officer Wood testified that he arrested Ambeau on 12 February 1992. Officer Wood also identified Ambeau in court as the person he arrested on 12 February 1992. Officer Wood testified that on 12 February 1992, he responded to a call that the victims of the present incident had spotted, and described, a man wanted on an armed robbery charge at the intersection of Thalia and South Galvez Streets. Officer Wood and several other police units converged on Thalia and South Galvez. Officer Wood stated that Ambeau began to walk away from the intersection when he spotted the first marked unit approach the intersection. The officers stopped Ambeau before he could leave the scene and advised him that he was under investigation for armed robbery. After patting down Ambeau for weapons, the officers took him before Gains and Ford, who identified him as the perpetrator. Officer Wood testified that he confiscated a gold anchor on a chain, a small ring, and Ambeau’s shirt upon his arrest. Officer Wood identified the foregoing items in court as State Exhibits One and Two. Officer Wood also noted that Gains identified the jewelry as belonging to her at the time of the post-incident identification. Finally, Officer Wood testified that the police never recovered the weapon used in connection with the armed robbery.

ERRORS PATENT

A review of the record reveals no errors patent.
| ^ASSIGNMENT OF ERROR NUMBER 1
In his sole assignment of error, Ambeau asserts that he has been denied his constitutional right to a full review of his multiple offender adjudication due to the fact that the transcript of the proceedings cannot be found. Accordingly, he urges this court to vacate his multiple offender adjudication and remand his case to the trial court for a new multiple offender hearing. After reviewing the record and relevant case law, we are of the opinion that Ambeau’s assignment has merit.
The state constitution provides that “[n]o person shall be subjected to imprisonment ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.” La. Const. Art. I, § 19. In felony cases, the recording of “all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel” is *59 statutorily required. La.C.Cr.P. art. 843. The court reporter shall record all portions of the proceedings required by law and shall transcribe those portions of the trial proceedings required. La. R.S. 13:961(C).
Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal require reversal. State v. Landry, 97-0499 (La.6/29/99), 751 So.2d 214. On the other hand, “inconsequential omissions or slight inaccuracies do not require reversal.” State v. Harry, 01-2336, pp. 4-5 (La.App. 4 Cir. 6/26/02), 823 So.2d 987, 991-92, citing State v. Frank, 99-0553 (La.1/17/01), 803 So.2d 1. Further, “a defendant is not entitled to relief because of an incomplete record absent a showing of prejudice...” Id.
In State v. Ford, 338 So.2d 107, 110 (La.1976), the Louisiana Supreme Court stated:
19Without a complete record from which a transcript for appeal may be prepared, a defendant’s right of appellate review is rendered meaningless. A slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal would not cause us to reverse defendant’s conviction. But where a defendant’s attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors so that he may properly perform his duty as appellate counsel, the interests of justice require that a defendant be afforded a new, fully-recorded trial.
In Ford, the Court found the omission of the testimony of four state witnesses, voir dire, and opening statements made it impossible for counsel, who was appointed for the appeal, to adequately review the record for errors. In State v. Belt, 01-0081 (La.App. 4 Cir. 08/29/01), 798 So.2d 1038, the defendant was found guilty of distributing cocaine and sentenced as a third-time felony offender. On appeal, the defendant argued that the loss of the transcript on his multiple bill hearing deprived him of his constitutional right to an appeal. After noting that the relevant minute entry reflected the defendant’s objection to the admission of all evidence at the multiple offender hearing, this court held that the failure to produce the transcript of the multiple offender hearing deprived the defendant of his constitutional right to an appeal. Belt, 01-0081 at p. 3, 798 So.2d at 1040. Similarly, in State v. Santee, 02-0693 (La.App. 4 Cir. 12/04/02), 834 So.2d 533, this court held that a defendant’s adjudication and sentence under the multiple offender statute had to be reversed in light of the fact that those exhibits introduced by the state at the multiple bill hearing could not be located for the appellate record.
In the present case, the record does not contain any written objection from defendant to the state’s multiple bill pursuant to the requirements of La. R.S. 15:529.1(D)(l)(b). On the other hand, the minute entries for all dates relevant to |inthe defendant’s multiple bill are illegible. Accordingly, we cannot ascertain from the minute entries: (1) whether the defendant was arraigned on the multiple bill; (2) the defendant’s plea to the multiple bill; (3) whether the defendant’s attorney made any objections at the multiple bill hearing; and (4) whether the defendant’s attorney objected to the trial court’s sentence on the multiple bill. Accordingly, we cannot ascertain from the record whether the defendant waived his right to contest his conviction and sentence on the multiple bill. Additionally, it does not appear that the loss of the multiple offender hearing transcript is attributable to the defendant. Although Ambeau failed to move for an appeal until the passage of two years after *60 his initial conviction and sentence, the record nevertheless shows that he has consistently, though to little avail, attempted to secure an appeal with this court. Moreover, a review of the record suggests that those delays associated with the present appeal are largely attributable to the criminal justice system. Further, it is important to note that Ambeau’s appellate attorney did not represent Ambeau at trial. Therefore, the defendant’s attorney has no way of knowing what transpired at the multiple offender hearing.
We conclude that Ambeau has been prejudiced by the absence of the transcript of his multiple bill hearing in light of: (1) the illegible minute entries; (2) the absence of his present attorney from the trial of this matter; (3) the defendant’s repeated unsuccessful attempts over the past ten years to enforce his appeal rights; and (4) the defendant’s effective life sentence.

MOTION TO DISMISS

While this appeal was pending in this court, the state filed a motion to dismiss Ambeau’s appeal urging that it is untimely. In view of our findings and | n conclusions above, we find that substantial justice requires our disposition of this appeal as timely. Accordingly, we find the state’s motion to dismiss is appropriately denied.

CONCLUSION

After reviewing the record and the applicable case law, Ambeau’s multiple offender conviction and sentence under La. R.S. 15:529.1 are vacated and the case is remanded for a new trial on the state’s multiple bill. Additionally, the state’s motion to dismiss the appeal is denied.
MULTIPLE OFFENDER CONVICTION AND SENTENCE VACATED; REMANDED; MOTION TO DISMISS DENIED.

. For example, the docket master indicates that the state filed a multiple bill on 15 June 1992. The foregoing entry also notes that the trial court set arraignment on the multiple bill for 8 July 1992. The 8 July 1992 entry notes that Ambeau was present in court but that the trial court continued the matter on the state's motion. Although the multiple bill hearing eventually took place on 11 September 1992, no mention is made in the docket master about arraignment. Ambeau was no doubt arraigned on the multiple bill. The docket master, nevertheless, fails to reflect this fact.

. It does not appear that the trial court ever made a ruling on the application. The 4 September 1997 docket master entry indicates that the matter was continued without date.