TERRI F. LOVE, Judge.
_JjThe defendant, Darrel Ambeau (hereinafter “Defendant” or “Ambeau”) was charged with one count of violating La. R.S. 14:64, armed robbery, and one count of violating La. R.S. 14(27)64, attempted armed robbery. Ambeau appeared before the trial court for arraignment and pled not guilty to both charges. The trial judge found Ambeau guilty on both counts and later sentenced Ambeau to fifty years for the armed robbery conviction and twenty-five years for the attempted armed robbery conviction.
Ambeau appeals his sentence as excessive and seeks to have a minute entry corrected. Further, in a pro se assignment of error, Ambeau asserts that his conviction should be overturned due to insufficient evidence. We find no error in *218 the trial court’s sentence imposition and affirm the defendant’s convictions and sentences. We remand this matter to the trial court for amendment of the minute entry to reflect that defendant’s two sentences are to run concurrently.

FACTUAL AND PROCEDURAL HISTORY

On March 6,1992, the State of Louisiana charged Ambeau by bill of information with one count of violating La. R.S. 14:64, armed robbery, and one count of violating La. R.S. 14(27)64, attempted armed robbery. Ambeau appeared |2before the trial court for arraignment and pled not guilty to both charges. Thereafter, the trial court heard Defendant’s motion to suppress and conducted a preliminary hearing. At the close of the hearings the trial court denied defendant’s motion and found sufficient probable cause to substantiate the charges brought against him by the State.
The State brought its case against Am-beau to trial, and Ambeau waived the jury and elected to have his ease tried before the trial judge. The State introduced two exhibits and presented testimony from three individuals. After the close of evidence, the trial judge found Ambeau guilty on both counts. On May 14, 1992, the trial court sentenced Ambeau, to fifty years for the armed robbery conviction and twenty-five years for the attempted armed robbery conviction. The sentences were to run concurrently and both were at hard labor without benefit of probation, parole, or suspension of sentence.
On September 11, 1992, the trial court adjudicated defendant a third-time felony offender as to the armed robbery conviction only. Ambeau was then resentenced to serve sixty-six and two-thirds years at hard labor without benefit of parole. The minute entries for May 14, 1992 and September 11, 1992 are largely illegible. However, examination of the September 11, 1992 entry shows that it contains information not included in the docket master summary. Accordingly, it cannot be ascertained from the record whether Am-beau’s counsel made any objections to the State’s evidence or to the trial court’s sentence. Nevertheless, the record contains no written response to the multiple bill as required by La. R.S. 15:529.1(D)(l)(b).
Neither the record nor any of the legible minute entries, indicate that Ambeau moved for an appeal. Ambeau contends that he moved for an out-of-time |sappeal, the appointment of new counsel and for the production of trial documents on July 24, 1994. Nevertheless, the record is devoid of this purported motion. On September 1, 1994, Ambeau filed a writ of mandamus (writ 94-K-1744) with this Court complaining that the trial court failed to rule on his motions. On November 10, 1994, this Court transferred defendant’s motion to the trial court for consideration within thirty days of the order. In connection with writ 95-K-0823, this Court issued a second order reiterating the order issued in connection with writ 94-K-1744. On August 17,1995, the trial court granted Ambeau’s motion for an out-of-time appeal. However, this Court never received notice of Ambeau’s appeal.
In writ 2001-K-1677, Ambeau sought to have the trial court’s judgment granting his out-of-time appeal enforced. He also sought to dismiss his retained counsel and have new counsel appointed. The docket master reflects that on April 28, 1997, the trial court allowed Ambeau’s retained counsel to voluntarily withdraw from the case. However, prior to withdrawing, Am-beau’s counsel filed an application for post-conviction relief. Because the record had not been made available for review, the claims raised by Ambeau’s counsel were *219 unknown. Therefore, it was possible that Ambeau had since waived his right to an appeal. In light of these circumstances, the writ was granted and the trial court was ordered to enforce its judgment unless it specifically found that Ambeau waived his right to an appeal. If it found that Ambeau had not waived his right to an appeal, the district court was ordered to appoint counsel and file a notice of appeal in this court within sixty days of the order. Alternatively, if it found that Ambeau had waived his right to an appeal, the trial court was ordered to file a minute entry in this Court within sixty days of the order reflecting its findings.
|4In writ 2004-K-1744, Ambeau asserted that the trial court failed to comply with this Court’s prior orders. The writ was granted and the trial court was ordered to enforce its judgment unless it specifically found that Ambeau waived his right to an appeal. If it found that Ambeau had not waived his right to an appeal, the district court was ordered to appoint counsel, and this Court ordered that a notice of appeal be filed within thirty days of the order. Alternatively, if it found that Ambeau had waived his right to an appeal, the trial court was ordered to file a minute entry reflecting its findings in this Court within thirty days of the order.
Ambeau’s filed a notice of appeal in the trial court on January 20, 2005. The record was lodged in this Court on May 10, 2005. On May 2, 2005, the trial court wrote a letter to this Court wherein it stated that the transcript from Ambeau’s May 14, 1992 multiple offender hearing could not be located. Specifically, the trial court’s letter stated that the pertinent court reporter could find no notes or transcripts for the May 14, 1992 hearing. Am-beau filed his brief on August 16, 2005. On February 14, 2006, this Court vacated Ambeau’s multiple offender conviction and sentence based upon the fact that the transcript from the defendant’s multiple offender hearing could not be located and the relevant minute entries were illegible. State v. Ambeau, 2005-0711 (La.App. 4 Cir. 2/15/06), 930 So.2d 54. Accordingly, this Court remanded Ambeau’s ease to the tidal court for another multiple offender hearing.
The record indicates that on remand the trial court held another multiple bill hearing on March 23, 2007. At the hearing, the trial court quashed the multiple bill on the grounds that more than one year had passed since this Court remanded the matter to the trial court for another multiple bill hearing. On June 18, 2007, the defendant appeared before the trial court for resentencing on his original ^convictions. The record reflects that prior to resentenc-ing, the trial judge recounted this matter’s procedural history; the trial judge stated several times that he remembered the case. The trial court then re-imposed a fifty-year sentence on the defendant for his conviction with respect to the armed robbery charge. Further, while the trial judge opined that he did not think that Ambeau needed to be resentenced with respect to the attempted armed robbery charge, the trial court reimposed the twenty-five year sentence.
The record shows that Ambeau was convicted for crimes involving two victims. The first victim to testify, Lisa Ford (hereinafter “Ms. Ford”), stated that on February 10, 1992, she and Sheila Gains were walking on the Thalia Courtway in the vicinity of South Galvez and Thalia streets in New Orleans, Louisiana between 10:00 and 11:00 p.m. Ms. Ford testified that as they walked on the sidewalk up the court-way she noticed a group of men outside. Ms. Ford stated that she knew the men and told Ms. Gains that they could go up the courtway. It was at this point that the *220 incident at issue transpired. Ms. Ford described the incident accordingly:
And, as we walking, the guy walked up to us and said, “Are you looking for anything?” And, we said, “No.” And, he said okay, and he turned his back to us, and then he turned right back around, and when he turned right back around, he stuck the gun in my face. He said, “Give me whatever you all have. Give me what you got.” And, it was so close to the end of the building to where I had a chance to run around the building, and Ms. Gains was getting ready to run, but when she ran be [sic] it was raining outside she tripped and fell. And, when she fell like she tripped, that’s when he pulled her back, and I made it around to the other side of the building. And, I looked up at him and her, down where she was taking all her stuff and giving it to him, the jacket, and so I went for help. And, when I came back she was running up the courtway crying.
Further, Ms. Ford identified Ambeau in court as her assailant and noted that prior to the incident she had known him for approximately fifteen years. | ^Following the incident, Ms. Ford and Ms. Gains went to Ms. Gains’ house. Because Ms. Gains’ home lacked a telephone, and fearing retaliation from Ambeau, Ms. Gains and Ms. Ford did not call the police immediately after the incident. Rather, Ms. Gains and Ms. Ford called the police the following morning. The police did not come out to the scene of the crime. Rather, the police gave Ms. Gains and Ms. Ford an incident number and asked them to call in the event they saw Ambeau again. Ms. Gains and Ms. Ford saw Ambeau the following day, called the police, and gave a description of the clothes that Ambeau was wearing at the time. Ms. Ford testified that Ambeau was wearing a pair of blue jeans and a “green, turquoise green like shirt with a stripe going across his chest.” Ms. Ford also stated that she told the police what Ambeau was wearing at the time of the incident. Specifically, Ms. Ford testified that at the time of the incident Am-beau was wearing blue jeans and a light, cream-colored windbreaker.
Later the police arrested Ambeau and took him to Ms. Gains and Ms. Ford so that they could attempt to identify him. Ms. Ford testified that after the police arrived, she and Ms. Gains again described the clothes that Ambeau was wearing at the time they spotted him. The police then took Ambeau out of their ear and asked Ms. Gains and Ms. Ford if they could identify him. Ms. Ford identified Ambeau as the assailant from the February 10, 1992 incident. In court, Ms. Ford further identified State Exhibit One as the clothes worn by Ambeau at the time of the post-incident identification. Ms. Ford also identified State Exhibit Two as the ring and anchor pendant taken from Ms. Gains by Ambeau and recovered by the police.
At trial, Ms. Gains testified that on the date of the incident she was walking with Ms. Ford on the Thalia courtway at approximately 10:30 or 11:00 p.m. Ms. Gains testified that she turned around when she heard Ms. Ford say “Oh, Lord!,” |7and then saw a gun in her face. Ms. Gains testified that Ms. Ford grabbed her and that she tried to run. However, Ms. Gains slipped on the wet ground. The assailant then took Ms. Gains’ coat, a ring, two chains, and an anchor. Ms. Gains identified Ambeau in court as her assailant and noted that she knew him from around the housing development. Additionally, Ms. Gains identified State Exhibit Two as the ring and anchor pendant taken from her by Ambeau on the night of the incident.
Like Ms. Ford, Ms. Gains testified that she did not call the police on the night of the incident because she was afraid and *221 unable to get to a phone. Like Ms. Ford, Ms. Gains also testified that they called the police the next day. According to Ms. Gains, the police told her to call them back if ever they should see Ambeau again. Ms. Gains testified that she and Ms. Ford spotted Ambeau the next day in the court-way. Ms. Gains stated that she and Ms. Ford then called the police. An officer came to meet them, and Ms. Gains and Ms. Ford described Ambeau to the officer. The officer then went and found Ambeau. After arresting Ambeau, the officer took him back to Ms. Gains and Ms. Ford for identification, and Ms. Gains stated that she identified Ambeau as the man who robbed her on the night of the incident.
Clifford Wood, an officer with the New Orleans Police Department, Sixth District, also testified at trial. Officer Wood testified that he arrested Ambeau on February 12,1992. Officer Wood also identified Am-beau in court as the person he arrested on February 12, 1992. Officer Wood testified that on February 12,1992, he responded to a call that the victims of the present incident had spotted, and described, a man wanted on an armed robbery charge at the intersection of Thalia and South Galvez. Officer Wood and several other police units converged on j ¡¡Thalia and South Gal-vez. Officer Wood stated that Ambeau began to walk away from the intersection when he spotted the first marked unit approach the intersection. The officers stopped Ambeau before he could leave the scene and advised him that he was under investigation for armed robbery. After patting down Ambeau for weapons, the officers took him to Ms. Gains and Ms. Ford, who identified him as the perpetrator. Officer Wood testified that he confiscated a gold anchor on a chain, a small ring, and Ambeau’s shirt upon his arrest. Officer Wood identified the foregoing items in court as State Exhibits One and Two. Officer Wood also noted that Ms. Gains identified the jewelry as belonging to her at the time of the post-incident identification. Finally, Officer Wood testified that the police never recovered the weapon used in connection with the armed robbery.

EXCESSIVE SENTENCING

In his first assignment of error, Ambeau asserts that his sentences of fifty years for armed robbery and twenty-five years for attempted armed robbery are excessive and should be vacated by this Court.
La. Const. art. I, § 20 (1974) explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted, on other grounds, (La.App. 4 Cir. 3/16/99). However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2982 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987).
| ¡When a trial court determines a sentence from a carefully tailored penalty statute, such as the statutes applicable to the instant case, there is a strong presumption that the sentence is constitutional. State v. Bunley, 2000-0405, p. 24 (La.App. 4 Cir. 12/19/01), 805 So.2d 292, 308. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Bertrand, 2004-1496, p. 6 (La.App. 4 Cir. 12/15/04), 891 So.2d 752, 757. A *222 sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 9, 656 So.2d at 979; State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
A reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983). However, as noted in State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 819, an appellate court should not vacate a sentence simply because a trial court has not followed La.C.Cr.P. art. 894.1:
The articulation of the factual basis for a sentence is the goal of Ait. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1 ... The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.
(Citations omitted.)
hnTherefore, if adequate compliance with article 894.1 is found, or if the sentence is supported by the record, the reviewing court must determine whether the sentence imposed is too severe in light of this particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
The trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
As noted, the defendant was sentenced to fifty years at hard labor for the charge of armed robbery and twenty-five years at hard labor for the charge of attempted armed robbery. La. R.S. 14:64(B) provides: “Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.” Therefore, under this article, Ambeau faced a maximum sentence of ninety-nine years on the armed robbery charge. Further, La. R.S. 14:27 provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
[[Image here]]
D. Whoever attempts to commit any crime shall be punished as follows:
[[Image here]]
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or lnone-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
*223 Accordingly, under these articles, Am-beau faced a maximum sentence of forty-nine and one-half years on the attempted armed robbery charge.
We find that Ambeau’s sentences are not excessive as they are supported by the record and the case law. The record indicates that Ms. Ford testified clearly that while she and Ms. Gains were out walking at night the defendant approached Ms. Ford, pointed a gun in her face, and demanded that she give him everything she had. Ms. Ford then ran away and was able to escape the defendant. In contrast, Ms. Gains testified that they were walking together on the night of the incident, when she heard Ms. Ford yell. Ms. Gains then turned around and saw the defendant pointing a gun at Ms. Ford. Like Ms. Ford, Ms. Gains also attempted to run away but she slipped and fell, whereupon the defendant took her jacket and jewelry. Additionally, each victim’s testimony corroborated the other’s and both victims stated that they knew the defendant from the neighborhood.
In sentencing the defendant, the trial judge stated that he remembered the case, recalled that defendant used a gun in the connection with the charged offenses, and took into account the defendant’s history of criminal behavior. Although the record does not indicate whether the trial court specifically considered any of the factors set out in La.C.Cr.P. art. 894.1, it nevertheless reveals that numerous factors listed in the article are implicated by the facts of this ease: (A)(3) a lesser sentence will deprecate the seriousness of the defendant’s crime; (B)(1) the offender’s conduct during the commission of the offense manifested deliberate cruelty to the victim; (B)(5) the offender knowingly created a risk of death or great bodily harm to more than one person; (B)(6) the offender | i?used threats of actual violence in the commission of the crime; (B)(10) the offender used a dangerous weapon in the commission of the offense; and (B)(19) the offender used a firearm or other dangerous weapon while committing or attempting to commit an offense which has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and which by its very nature, involves a substantial risk that physical force may be used in the course of committing the offense. Thus, a sentence of imprisonment was warranted by the circumstances of this case.
We first note that the Louisiana Supreme Court has held that a thirty-five to fifty-five year sentence is appropriate for first offenders convicted of armed robbery. State v. Smith, 2001-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4. In the present case, Ambeau’s sentences fall within the lower half of the authorized sentencing range. Additionally, in State v. Watson, 575 So.2d 411 (La.App. 4 Cir.1991), this Court held that a fifty year sentence was not excessive for a defendant who was convicted of armed robbery and had a significant criminal history. Further, in State v. Stanton, 2005-0812 (La.App. 4 Cir. 3/8/06), 929 So.2d 137, this Court found that a forty-five year sentence was not excessive for a defendant who was convicted of attempted armed bobbery. Accordingly, the trial court did not abuse its discretion in sentencing Ambeau to fifty years at hard labor for his armed robbery conviction and twenty-five years at hard labor for his attempted armed robbery conviction.

ERRONEOUS MINUTE ENTRY

In his second assignment of error, Am-beau asks this Court to remand this matter to the trial court in order to correct an erroneous minute entry. Specifically, the transcript from the defendant’s sentencing *224 hearing indicates that the tidal court |lsordered that defendant’s two sentences are to run concurrently. However, the minute entry for this date indicates that the sentences are to run consecutively. Accordingly, the defendant asks this Court to remand this matter to the trial court so that the June 18, 2007 minute entry can be corrected to reflect the true intent of the trial court. The State’s memorandum specifically indicates that it does not oppose defendant’s request on this point. In State v. Stovall, 2007-0843, pp. 14-15 (La.App. 4 Cir. 2/6/08), 977 So.2d 1074, 1083, this Court held that where there is a discrepancy between a minute entry and a transcript, the transcript must prevail. Accordingly, we remand this matter to the trial court for correction of the erroneous June 18, 2007 minute entry to reflect that defendant’s two sentences are to run concurrently.

SUFFICIENCY OF EVIDENCE

In his first pro se assignment of error, Ambeau asserts that his conviction should be overturned because the record fails to establish that a rational fact finder could have found him guilty beyond a reasonable doubt of armed robbery. Via pro se memorandum, Ambeau’s sufficiency of the evidence allegation is being raised for the first time.
We first note that Ambeau does not challenge the sufficiency of the evidence insofar as it relates to his conviction for attempted armed robbery. Moreover, while Ambeau’s memorandum adequately sets out the applicable case law concerning a sufficiency of the evidence review, it fails to identify the manner in which the State’s evidence is lacking. That is, the defendant’s memorandum asserts nothing more than a pro forma sufficiency of the evidence argument.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 14(1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. State v. Shaw, 2007-1427, p. 15 (La.App. 4 Cir. 6/18/08), 987 So.2d 398, 408. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. Id. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In this case, defendant was convicted of armed robbery which is defined La. R.S. 14:64(A) accordingly: “Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.” The record indicates that Ms. Ford gave the most succinct description of the events as provided above.
*225 Further, Ms. Gains testified that the defendant took her jacket and her jewelry. Several items of Ms. Gains’ jewelry were found on defendant’s person after his eventual arrest. At trial, both victims were able to identify the seized jewelry as belonging to Ms. Gains prior to the incident. Further, as previously | ,rrnoted herein, both victims testified stated that they knew the defendant from the neighborhood, and each victim’s testimony corroborated the other’s. Accordingly, the evidence in the record establishes clearly that defendant’s conviction for armed robbery is rational and supported by facts in the record. Thus, we find that the State did in fact prove its case.

MOTION FOR RECONSIDERATION OF SENTENCE

In his second pro se assignment of error, Ambeau notes that he filed a pro se motion for reconsideration of sentence in response to his June 18, 2007 sentence but that the record does not indicate whether the trial court actually ruled on the motion. Accordingly, Ambeau asks this Court to remand this matter to the trial court so that it can rule on his motion for reconsideration.
However, we determine that the trial court ruled on the defendant’s motion. Specifically, the transcript of the June 18, 2007 resentencing indicates that the defendant, through counsel, orally moved the trial court to reconsider the new sentence. The record notes that the trial court neither ruled on the motion at that time nor set a rule date. On January 16, 2008, Ambeau filed a pro se criminal writ with this Court seeking to compel the trial court to rule on his motion for reconsideration. On February 8, 2008, this Court granted Ambeau’s writ application and ordered the trial court to rule on the oral motion to reconsider as well as Ambeau’s pro se motion. Id. As proof of compliance, the trial court transmitted a copy of a minute entry from February 26, 2008, which states that the trial court denied the defense motion to reconsider sentence on this date. Accordingly, we find that Am-beau’s second pro se assignment of error is without merit as the trial court did in fact rule upon his motion to reconsider sentence.

DECREE

|1(;We affirm the defendant’s convictions and sentences and remand this matter to the trial court with instructions to amend the June 18, 2007 minute entry to reflect that defendant’s two sentences are to run concurrently.
AFFIRMED IN PART; REMANDED IN PART.