<p style="color:red; text-align:center; font-weight:bold">CORRECTED OPINION</p>

| | | |
|---|---|---|
| **STATE OF LOUISIANA** | * | **NO. 2025-KA-0244** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **GABRIEL O. HUNTER** | * | **FOURTH CIRCUIT** |
| | * | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 536-435, SECTION "H"
Honorable Camille Buras, Judge
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Rachael D. Johnson, Judge Karen K. Herman)

Jason Rogers
DISTRICT ATTORNEY
Brad Scott
CHIEF OF APPEALS
Zachary Phillips
ASSISTANT DISTRICT ATTORNEY
ORLEANS PARISH DISTRICT ATTORNEY
619 SOUTH WHITE STREET
NEW ORLEANS, LA 70119

      COUNSEL FOR STATE/APPELLEE

Summer Vicknair
LOUISIANA APPELLATE PROJECT
P. O. Box 1509
Ponchatoula, LA 70454

      COUNSEL FOR DEFENDANT/APPELLANT

      **AFFIRMED**

      **FEBRUARY 10, 2026**

Appellant, defendant Gabriel O. Hunter, seeks review of his conviction for molestation of a juvenile when the victim is under the age of thirteen and his sentence of 50 years at hard labor, concurrent with all other counts and cases, with the first 25 years to be served without probation, parole or suspension of sentence. Finding no error, Defendant's conviction and sentence are affirmed.

**Procedural History**

On August 11, 2017, the State filed an indictment charging Defendant with one count of aggravated rape of a juvenile under thirteen years of age, a violation of La. Rev. Stat. 14:42(A)(4) (2013). He entered a plea of not guilty at his arraignment. A trial ("First Trial") was held in 2018, and by a vote of ten-to-two, the jury returned a verdict of guilty of the lesser included offense of molestation of a juvenile under the age of thirteen, a violation of La. Rev. Stat. 14:81.2(D)(1) (2013). Defendant was sentenced to 50 years imprisonment at hard labor, with 25 years of which to be served without the benefits of parole, probation, or suspension of sentence.

Defendant appealed his conviction and sentence. On appeal, this Court vacated his non-unanimous jury verdict as unconstitutional pursuant to *Ramos v. Louisiana*, 590 U.S. 83, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020). *State v. Hunter*,

1

19-0901 (La. App. 4 Cir. 5/27/20), 364 So.3d 249.[1] The State re-instituted prosecution on the charge of molestation of a juvenile under the age of thirteen.

In 2024, Defendant filed a motion to quash, arguing that he was subjected to double jeopardy as he was acquitted of the element of the victim being under the age of thirteen. The district court denied his motion. Defendant sought review of that ruling; however, both this Court and the Louisiana Supreme Court denied writs. *State v. Hunter*, 24-0145 (La. App. 4 Cir. 3/13/24), *writ denied*, 24-00370 (La. 4/10/24), 383 So.3d 157.

Defendant's second trial, at issue here, commenced on August 5, 2024, and the jury returned a unanimous verdict of guilty as charged, molestation of a juvenile when the victim is under thirteen years of age. The district court imposed the same sentence as Defendant's initial sentence, over his objection: 50 years imprisonment at hard labor, 25 years of which must be served without the benefits of parole, probation, or suspension of sentence. This timely appeal followed.

**Facts**

At trial, the State presented testimony from six witnesses: two medical professionals, the victim's mother, a law enforcement officer, a forensic interviewer, and the victim. The defense presented no witnesses.

Initial Disclosure and 2015 Medical Evaluation

---

[1] Defendant filed several *pro se* motions following the reversal of his conviction and sentence seeking writs of mandamus; review of his (incorrectly styled) motion to quash; the court's failure to recuse itself; and the court's failure to appoint conflict-free counsel. Nevertheless, because many of his complaints primarily addressed his first conviction, which was ultimately reversed, the issues raised were mostly moot. *See State v. Hunter*, 20-0270 (La. App. 4 Cir. 7/1/20); *State v. Hunter*, 20-0637 (La. App. 4 Cir. 12/15/20), *writ denied*, 21-056 (La. 2/17/21), 310 So.3d 1151; *State v. Hunter*, 21-0257 (La. App. 4 Cir. 5/13/21); *State v. Hunter*, 21-0321 (La. App. 4 Cir. 6/2/21); *State v. Hunter*, 21-0362 (La. App. 4 Cir. 6/22/21); *State v. Hunter*, 21-0424 (La. App. 4 Cir. 7/16/21), *writ denied*, 21-01247 (La. 12/21/21), 329 So.3d 826.

In 2015, when the victim was eleven years old, she disclosed allegations of sexual abuse through a handwritten note given to her mother. The note described abuse and expressed fear of disclosing the allegations earlier, including concern about the consequences for others and fear of getting into trouble. Upon receiving the note, the victim's mother sought immediate medical care and reported the allegations.

The victim was first evaluated in the emergency department at Children's Hospital in New Orleans and was then referred for a forensic interview and medical examination conducted by Dr. Anne Troy, a pediatric forensic nurse practitioner. The forensic interview was audio and video recorded pursuant to hospital protocol. The recording was admitted into evidence and played for the jury.

Dr. Troy testified that during the interview, the victim provided a narrative describing repeated incidents of sexual contact with Defendant occurring over a period of time and in more than one location. Dr. Troy testified that the victim described the circumstances under which the incidents occurred, including that the alleged abuse took place during periods when the victim was living in a household where Defendant resided, and explained her emotional responses, including fear and confusion. Dr. Troy documented the victim's account contemporaneously in her written report.

Dr. Troy further testified that the victim's mother reported that, prior to the disclosure, the victim had been experiencing behavioral and disciplinary issues at school, including fighting and defiance. Dr. Troy explained that such behavioral changes may be associated with trauma or abuse, particularly in children who have not yet disclosed.

Dr. Troy testified that the physical examination revealed no observable signs of sexual trauma and that an earlier emergency department examination also yielded normal findings. She explained that the absence of physical findings was not unexpected given the delayed nature of the disclosure and the tendency for genital injuries to heal quickly. Based on the victim's statements, Dr. Troy characterized the history as consistent with repeated or chronic sexual abuse.

Dr. Troy forwarded her report, including the recorded interview, to the New Orleans Police Department as part of the hospital's standard reporting process. She testified that she was not contacted for follow-up and was unaware of any immediate investigative action related to the 2015 disclosure.

Subsequent Behavioral Changes and Second Disclosure

The victim's mother testified that after the initial disclosure and medical evaluation, the victim began counseling and showed some improvement in behavior. Several months later, however, the victim's behavioral difficulties returned, including increased conflict at school, disciplinary problems, and social withdrawal. The mother testified that the victim again became argumentative with teachers and increasingly isolated herself.

In 2016, the victim disclosed additional allegations of sexual abuse involving a different individual, identified as her sister's boyfriend. The victim testified that, at the time of the alleged abuse, her sister's boyfriend was residing in the home. This disclosure was made first to a school employee. The school contacted law enforcement in accordance with mandatory reporting requirements.

2016 Medical and Forensic Evaluations

Following the second disclosure, the victim was again referred for medical and forensic evaluation. Dr. Jamie Jackson, a child abuse pediatrician, testified that

4

she examined the victim in 2016 at the Audrey Hepburn Care Center at Children's Hospital. At that time, the victim was twelve years old.

Dr. Jackson testified that the victim was referred primarily in connection with the second allegation, but during the evaluation, the victim also disclosed prior sexual abuse by Defendant. Dr. Jackson testified that the victim provided a clear and detailed account of the alleged abuse, including descriptions of repeated sexual contact occurring over several years. Dr. Jackson testified that the victim's account was developmentally appropriate and consistent with patterns seen in child sexual abuse cases.

Dr. Jackson's written report documented both the victim's disclosures and concerns reported by the victim's mother regarding ongoing behavioral problems. Dr. Jackson testified that her medical examination did not reveal physical findings corroborating the allegations, which she explained was common in cases involving delayed disclosure.

Forensic Interview at Child Advocacy Center

Allyson Conway, who was qualified as an expert in forensic interviewing, testified that she conducted a recorded forensic interview of the victim at the Child Advocacy Center in 2016. Ms. Conway testified that the interview was conducted using established protocols designed to elicit information in a non-leading and developmentally appropriate manner.

Ms. Conway testified that during the interview, the victim disclosed sexual abuse by Defendant and by another individual. The victim described multiple incidents, explained that the abuse occurred over time, and discussed her reasons for not disclosing earlier, including fear, confusion, and concern about how others

would react. The recorded interview was admitted into evidence and played for the jury.

Law Enforcement Investigation

Sgt. Bianca Boone of the New Orleans Police Department testified that she became involved in the case after being dispatched to the victim's school following the second disclosure. Sgt. Boone testified that she coordinated the victim's medical evaluation at Children's Hospital and the forensic interview at the Child Advocacy Center.

During the course of her investigation into the second allegation, Sgt. Boone learned of the victim's earlier allegations involving Defendant. Sgt. Boone testified that she reviewed the victim's recorded medical and forensic interviews and relied on those statements in preparing arrest warrant applications for both alleged perpetrators.

On cross-examination, Sgt. Boone acknowledged that her investigation into Defendant relied primarily on the victim's statements obtained during the interviews and that she did not seek independent corroborating evidence. On re-direct examination, Sgt. Boone testified that due to the delayed disclosure of the allegations involving Defendant, forensic or DNA evidence would not have been available.

Victim's Testimony at Trial in August 2025

The victim testified that she was born in May 2003 and lived in several locations during her childhood due to family circumstances. She testified that the abuse by Defendant began when she was approximately eight or nine years old and occurred on multiple occasions over time.

The victim testified that she did not disclose the abuse initially because she was afraid and did not know how others would respond. She explained that she

6

feared getting into trouble and was concerned about potential consequences for others. She testified that her behavioral problems at school coincided with the period during which the abuse occurred.

The victim testified that she ultimately disclosed the abuse by writing a note to her mother after being confronted about her behavior at school. She testified that after the disclosure, she was taken to the hospital, spoke with medical providers, and later spoke with law enforcement and counselors.

The victim further testified that she later experienced abuse by another individual. She testified that she delayed reporting that abuse for similar reasons, including fear that she would not be believed. She eventually disclosed the abuse to a school counselor, which led to police involvement and additional medical and forensic interviews.

On cross-examination, the victim testified regarding the various residences she lived in during her childhood and acknowledged that she was unable to recall precise dates or exact timelines for each alleged incident. She testified, however, that the abuse occurred over a period of years and involved multiple incidents.

**Assignments of Error**

Defendant raises four assignments of error: 1) the district court erred by not including a charge in the instructions to the jury that they may, as jurors, find the accused guilty of a lesser included offense even though they may be convinced that the accused is guilty beyond a reasonable doubt of the offense charged; 2) the district court erred in dismissing Juror No. 1 without cause and after a contradictory hearing; 3) the district court erred in permitting the State to re-try Defendant under the enhanced sentencing provisions of La. Rev. Stat. 14:81.2, insofar as Defendant was

previously acquitted of those enhancements; and 4) Defendant's sentence is excessive under the circumstances, especially considering his advanced age.

## Errors Patent

A review of the record reveals no errors patent.

## Jury Charge

Defendant asserts that the district court erred in denying his requested special instruction to the jury, stating, "you may, as jurors, find the accused guilty of a lesser included offense even though you may be convinced that the accused is guilty beyond a reasonable doubt of the offense charged." Defendant relies upon the Louisiana Supreme Court's holding in *State v. Porter*, 93-1106 (La. 7/5/94), 639 So.2d 1137, reasoning a jury has the freedom to convict defendants of lesser included verdicts where the evidence presented supports the charged offense:

> Treating the jury's prerogative to return a responsive verdict similar to the jury's power of nullification, this court has consistently held that the jury must be given the option to convict the defendant of the lesser offense, even though the evidence clearly and overwhelmingly supported a conviction of the charged offense.

*Id.*, 93-1106, p. 4, 639 So.2d at 1140 (internal footnote omitted).

Article 807 of the Louisiana Code of Criminal Procedure pertinently provides:

> [a] requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.

Furthermore, the district court's "refusal to give a requested special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused." *State v. Parker*, 10-1277, p. 16 (La. App. 4 Cir. 9/21/11), 76 So.3d 55, 65 (quoting *State v. Jenkins*, 98-1603, pp. 23-24 (La. App.4 Cir. 12/29/99), 750 So.2d 366, 379).

In the instant matter, Defendant fails to prove how his substantial rights were prejudiced by the district court's refusal to give his requested special jury instruction. The district court explained at trial that Defendant's request was denied because his requested special jury instruction was substantially similar to the already included jury instruction regarding attempted offenses. The already included jury instruction provided that an attempt was a lesser grade of the intended offense and that "any person may be convicted of an attempt to commit the crime even though it appears from the trial that the crime intended or attempted was actually perpetrated…"

Additionally, Defendant's reliance upon *Porter* is misplaced. *Porter* does not hold that the district court must charge the jury with instructions that it could return a responsive verdict notwithstanding the evidence the State presented proving the charged offense. Rather, the *Porter* court held that the district court erred in deleting from the jury charges, over defendant's objection, two of the legislatively-authorized responsive verdicts for the crime charged. *Porter*, 93-1106, pp. 11-12, 639 So.2d at 1144. The *Porter* court essentially suggested that the legislative inclusion of responsive verdicts to the charged offense necessarily informs the jury that it could return a lesser verdict than one commensurate with the evidence presented at trial. *Id.*

Furthermore, Defendant's argument was rejected in *State v. Bartie*, 22-401, pp. 7-8 (La. App. 3 Cir. 9/6/18), 358 So.3d 266, 272-73. In *Bartie*, the defendant requested the same special jury instruction as Defendant in the instant matter. *Id.* The Third Circuit denied the defendant's argument, explaining that jury instructions informing jurors that they are able to render any sentence they desired despite the fact that the State established the elements of the charged offense are invalid:

9

> While [d]efendant tries to argue that his jury instruction was aimed at "compromise verdicts," the wording of the instruction makes clear [d]efendant sought to instruct the jury it could ignore the fact that the State proved its case and return any verdict it wished. That is not a valid statement of law, as evidenced by this court's rulings in *Kidd* and *Campbell*.[2] As the jury instruction was not a valid statement of law, [d]efendant was not entitled to have the instruction given to the jury under [La. Code Crim. Proc.] art. 807.

*Id.*, at p. 9, 358 So.3d at 274.

Similarly, in this case it does not appear that defendant was entitled to a special jury instruction informing the jury it was free to return a guilty verdict to a lesser included offense notwithstanding the evidence. Defendant failed to demonstrate both at trial and on appeal how the district court's refusal to provide the requested instruction prejudiced his substantial rights. Accordingly, this assignment of error is meritless.

**Juror Dismissal**

Defendant asserts that the district court erred in dismissing juror number one ("Juror One") without holding a hearing and replacing him with an alternate juror when he failed to timely report for duty the morning of trial, prior to the swearing-in of the first witness.

The trial transcript reflects that the district court and jury commissioner made several unsuccessful attempts to contact Juror One when he failed to appear at trial at 9:00 am, as ordered by the district court on the previous day. After waiting almost an hour, the district court stated:

> I do not want to hold this jury up. The juror is now 43 minutes late. At this point in time I have no way to know that he is going to appear in court.

---

[2] *See State v. Kidd*, 22-227 (La. App. 3 Cir. 9/14/22), 348 So.3d 243, and *State v. Campbell*, 21-437 (La. App. 3 Cir. 7/13/21) (unpub. opinion).

The district court then noted its intent to replace Juror One with an alternate. Defendant objected "to replacing [Juror One] at this juncture based on [Defendant's] rights to a fair trial and a jury of his peers under the federal and state constitutions," to which the district court replied,

> We've been here since 8:00 am and there have been no phone calls or nobody to tell us what's happened to this juror. The Court is left with no alternative except to swear in the alternate [juror] as juror number one.

After this portion of the hearing, at 9:59 am, Juror One appeared in court.

Louisiana district courts have the discretion to remove jurors they deem incompetent to serve prior to the swearing-in of the first witness. "If it is discovered after a juror has been accepted and sworn, that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course." La. Code Crim. Proc. art. 796. District courts have the discretion to select and impanel alternate jurors who "shall replace jurors who become unable to perform or disqualified from performing their duties." La. Code Crim. Proc. art. 789(A). Alternate jurors are drawn, examined, challenged, and sworn in the same manner as principal jurors, and are granted "the same functions, powers, facilities, and privileges." *Id.* "[T]he district court has discretion to utilize the service of an alternate juror, rather than to grant a mistrial, upon a proper finding that this is the best course of action." *State v. Lincoln*, 17-0170, p. 36 (La. App. 4 Cir. 11/3/17), 231 So.3d 161, 181 (citing *State v. Fuller*, 454 So.2d 119, 123 (La. 1984)).

In the instant matter, we do not find that the district court abused its discretion in determining that Juror One was "unable to perform" his duties and removing him as a juror when he failed to timely appear on the morning of trial on the first day

11

before witness testimony was to be taken. This Court, in *State v. Brauner*, 99-1954, p. 33 (La. App. 4 Cir. 2/21/01), 782 So.2d 52, 74, held that the district court did not abuse its discretion "in disqualifying the [sworn] juror who was missing from the jury room [at the close of voir dire] and replacing that juror with an alternate considering that testimony in the trial had yet to begin." Similarly, here, the district court had no way of knowing whether or when Juror One would appear, especially considering Juror One provided no notice and was unable to be contacted. This assignment of error is meritless.

**Double Jeopardy**

Defendant asserts that his enhanced sentence for molestation of a juvenile when the victim is under the age of thirteen was erroneously imposed in violation of double jeopardy principals. Defendant avers that the jury in the First Trial found him guilty only of molestation of a juvenile, not molestation of a juvenile under the age of thirteen, thereby implicitly acquitting him of the greater offense. Consequently, Defendant asserts that his retrial for the charge of molestation of a juvenile under the age of thirteen and the resulting sentence imposed violated the Sixth Amendment's prohibition of double jeopardy. Defendant's argument is procedurally and substantively meritless.

Louisiana's double jeopardy statute provides, "[w]hen a person is found guilty of a lesser degree of the offense charged, the verdict or judgment of the court is an acquittal of all greater offenses charged in the indictment and the defendant cannot thereafter be tried for those offenses on a new trial." La. Code Crim. Proc. art 598(A). Article 593 of the Louisiana Code of Criminal Procedure further provides, "[d]ouble jeopardy shall be raised by a written motion setting forth the name of the

court, the proceeding in which the defendant was in jeopardy, and the facts constituting double jeopardy."

In accordance with art. 598, Defendant's double jeopardy argument is barred on procedural grounds because the record reflects that he raised this argument at trial. "Double jeopardy may be raised at any time, **but only once**, and shall be tried by the court alone. If raised during the trial, a hearing thereon may be deferred until the end of the trial." La. Code Crim. Proc. art. 594 (emphasis added). Here, Defendant raised this identical claim in a motion to quash filed on February 2, 2024, which the district court denied following a hearing three days later. Thereafter, Defendant sought review of that ruling, which both this Court and the Supreme Court denied. *State v. Hunter*, 24-0145 (La. App. 4 Cir. 3/13/24), *writ denied*, 24-00370 (La. 4/10/24), 383 So.3d 157. Accordingly, Defendant is procedurally precluded from raising this issue again on appeal pursuant to La. Code Crim. Proc. art. 594.

Substantively, this claim is also meritless for the reasons the district court provided in its ruling denying Defendant's motion to quash. Upon denying Defendant's motion to quash, the district court reasoned that, although the list of responsive verdicts provided to the jury did not include an option to find that the victim was under the age of thirteen, the jury nevertheless understood that it was convicting him of molestation of a juvenile under the age of thirteen. The initial indictment charged Defendant with aggravated rape of a victim under the age of thirteen, and the district court included the element of the victim's age, which was under thirteen, in its instructions to the jury for the lesser-included offense of molestation of a juvenile. The district court further determined that the victim's age was undisputed at trial, and the State presented an abundance of evidence in any

13

event that the victim was considerably younger than thirteen years old at the time of the abuse. In light of the foregoing, we find this assignment of error is without merit.

## Excessive Sentence

Defendant asserts that his sentence of 50 years imprisonment at hard labor, 25 years of which must be served without the benefits of parole, probation, or suspension of sentence is excessive, especially considering that presently he is in his late fifties. Defendant, however, failed to file a motion for reconsideration of his sentence in the district court although he did lodge a general objection following the imposition thereof.

Pursuant to the Louisiana Code of Criminal Procedure, a defendant's "failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness" precludes a defendant "from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." La. Code Crim. Proc. art. 881.1 (E). Moreover, "when a defendant fails to file a La. C.Cr.P. art. 881.1 motion to reconsider sentence, an appellate court's review of the sentence is limited to a bare review for constitutional excessiveness." *State v. Zeitoun*, 17-0366, p. 15 (La. App. 4 Cir. 11/8/17), 231 So.3d 934, 945 (citing *State v. Mims*, 619 So.2d 1059, 1060 (La. 1993)). Therefore, due to the Defendant's error, we review his sentence solely for bare constitutional excessiveness.

The 2013 version of La. Rev. Stat. 14:81.2(D)(1) provides, "Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years" with at least 25 years imposed without the benefits of parole, probation or suspension of sentence.

14

As previously noted, the district court in this matter imposed a sentence of 50 years against Defendant, with 25 years to be served without the benefits of parole, probation, or suspension of sentence. Defendant's sentence is half the length of the proscribed maximum punishment. Nevertheless, a sentence that is within the statutory limits, however, may still violate a defendant's constitutional right against excessive punishment. *State v. Every*, 09-0721, p. 7 (La. App. 4 Cir. 3/24/10), 35 So.3d 410, 417.

A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. *State v. Ambeau*, 08-1191, p. 9 (La. App. 4 Cir. 2/11/09), 6 So.3d 215, 221. A trial court is afforded broad discretion in making sentencing decisions. *State v. Bradley*, 18-0734, p. 8 (La. App. 4 Cir. 5/15/19), 272 So.3d 94, 99-100. Additionally, "a sentence shall not be set aside for excessiveness if the record supports the sentence imposed." La. Code Crim. Proc. art. 881.4(D). Thus, "[t]he relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate." *State v. Mathieu*, 18-964, p. 4 (La. App. 3 Cir. 11/6/19), 283 So.3d 1041, 1045 (citing *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957).

Here, rather than impose the maximum sentence of 99 years imprisonment, the 50-year sentence the district court imposed was in the lower range, closer to the minimum allowable sentence of 25 years.[3] What is more, the portion of the sentence

---

[3] In like manner, the district court imposed the same 50-year sentence it imposed at the First Trial for the same "reasons under the code that it stated on the record back in 2019." The State recalled at the sentencing hearing in the instant matter that the district court's reasons for imposing a 50-year sentence following Defendant's First Trial included its finding that a lesser sentence may

the district court ordered to be served without the benefits of parole, probation, or suspension of sentence was also the statutory minimum term of 25 years. Notwithstanding that Defendant was 58 years old when he was convicted, under the unique circumstances of this matter, we find that the district court did not abuse its broad discretion in imposing Defendant's sentence. This assignment of error is meritless.

## DECREE

For the foregoing reasons, this Court affirms defendant Gabriel O. Hunter's conviction of one count of molestation of a juvenile when the victim is under the age of thirteen and his sentence to 50 years at hard labor, concurrent with all other counts and cases, with the first 25 years to be served without the benefits of probation, parole or suspension of sentence.

**AFFIRMED**

---

depreciate the seriousness of the crime, as molestation of a juvenile is "one of the most serious crimes that can be committed."

Furthermore, the First Trial jury found Defendant guilty of the responsive verdict of molestation of a juvenile under the age of thirteen rather than the charged offense of aggravated rape of a juvenile under the age of thirteen, a potentially capital offense. Therefore, the sentencing court was permitted to consider the significant reduction in the statutorily allowable punishment as a result of the jury's responsive verdict. *See e.g. State v. Wilson*, 12-1765, pp. 25-26 (La. App. 4 Cir. 2/12/14), 138 So.3d 661, 678 ("Considering the allegations [the defendant] faced, he greatly benefitted from the jury finding him guilty of the lesser responsive verdict of simple robbery. Accordingly, it cannot be said that the maximum sentence of seven years at hard labor [was excessive].").