JjPER CURIAM.[1]
The erroneous introduction of evidence relating to a defendant’s prior bad acts risks “lur[ing] the fact-finder into declaring guilt on a ground different from proof specific to the offense charged ... [by] generalizing a defendant’s earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged.... ” Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997). In the present ease, the court of appeal reversed respondent’s conviction and sentence for second degree murder in violation of La.R.S. 14:30.1 because it found the risk too great that her jurors used evidence of her drug use on the premises where the victim, a former roommate, had died at the hands of respondent’s lover, Jessie Lee, as a basis for their verdict that respondent had helped Lee to kill the victim and to dispose of his body. The state otherwise presented jurors with proof specific to the crime charged in the testimony of respondent’s eight-year-old son, who told jurors he witnessed the murder committed by both Lee and his mother, respondent’s custodial statements following her arrest, and evidence that respondent had lied remorselessly to the | ¡.police and to the victim’s relatives in the weeks following the murder to forestall the eventual discovery of the victim’s body. State v. Womack-Grey, 99-0416 (La.App. 4th Cir.5/17/00), 764 *1117 So.2d 108 (Armstrong, J., dissenting). We granted the state’s application to reverse the ruling below because we agree with the dissent that “[c]onsidering the persuasive eyewitness testimony of the defendant’s son and the defendant’s numerous misrepresentations about the ease, this evidence that the defendant and others used illegal drugs in the house surely did not affect the verdict.” Womack-Grey, 99-0416 at 1, 764 So.2d at 123 (Armstrong, J., dissenting).
At issue is a single line of testimony provided by Elizabeth Quigley, a co-worker of respondent, who had moved into the apartment respondent shared with Jessie Lee on North Lopez Street in New Orleans, in February of 1997, shortly after the victim’s murder. According to Quig-ley, respondent informed her that she had evicted the victim because he had been using drugs around her son. Respondent had made the same statement to the detective investigating the missing persons report placed by the victim’s sister which eventually led to discovery of the victim’s body and to respondent’s arrest. In an apparent attempt to show that the respondent had lied once more about the victim’s disappearance, the state asked Quigley whether she had in fact seen any drugs in the apartment. Quigley informed jurors, over defense objection and subsequent motion for a mistrial, that she had used drugs in the apartment with the respondent and Lee while respondent’s son remained in his bedroom. The state mentioned Quigley’s testimony during its rebuttal argument at the close of the case as it described the tissue of lies respondent had told in the months separating the victim’s disappearance and the discovery of his remains.
l3The majority on the court of appeal panel considering respondent’s conviction acknowledged that evidence of respondent’s remarks to Quigley about her supposed eviction of the victim for his drug use was relevant and admissible because the statement “was simply another lie that established defendant’s role in concealing the murder.” Womack-Grey, 99-0416 at 22, 764 So.2d at 121. However, subjecting Quigley’s additional testimony about drug use she had observed on the premises to the balancing test of La.C.E. art. 403, the majority concluded that “whatever relevance it had — if any — was substantially outweighed by the danger of unfair prejudice to the defendant, who was then revealed to the jury as a drug user and, accordingly, a criminal and an unfit mother.” Id., 99-0416 at 23, 764 So.2d at 121. Although it found the evidence constitutionally sufficient to support the jury’s verdict, Womack-Grey, 99-0416 at 18-19, 764 So.2d at 119, the majority reversed respondent’s conviction and sentence because it lacked “the utmost confidence that ... the verdict rendered was not surely unattributable to the wrongful introduction of the testimony.” Id., 99-0416 at 24, 764 So.2d at 122.
However, in the second of two statements she gave the police after her arrest, both of which the court read to jurors as they followed with transcripts provided by the state, respondent admitted that at Lee’s insistence, and when they were moving from the apartment, she had helped him remove the victim’s body from a shallow grave underneath the residence and then borrowed a truck to drive with Lee into St. Bernard Parish where they disposed of the remains. The court of appeal upheld the admissibility of respondent’s statements against her challenge that they were the products of an illegal arrest without probable cause. Womack-Grey, 99-0416 at 13-15, 764 So.2d at 116-17. Together with evidence that respondent had lied repeatedly to impede the investigation into the missing witness report made by the victim’s sister, respondent’s statements *1118 implicated her as an ^accessory after the fact to murder because she had aided Lee “knowing or having reasonable ground to believe that he [had] committed the felony, and with the intent that he ... avoid or escape from arrest, trial, conviction or punishment.” La.R.S. 14:25.
Respondent’s damning admissions in her custodial statement drew her ever closer to the hub of the murder prosecution against her. This evidence, together with the pattern of her misrepresentation to derail the investigation and the eyewitness account of her son describing respondent’s participation with Lee in the victim’s murder, provided the evidentiary nexus for the jury to decide the question of her guilt or innocence, also taking into account evidence that respondent’s son had given his own prior inconsistent statements about his mother’s role in the murder. In this context, the brief testimony Quigley provided about respondent’s drug use, which had no discernible connection to the charged crime and thereby lacked the compelling nature of respondent’s custodial admissions, did not pose a significant risk of luring jurors into deciding the ease on the basis of respondent’s general criminal disposition as opposed to evidence relating directly to the charged crime. We therefore conclude that admission of Quig-ley’s testimony, if erroneous, was harmless because the verdict “actually rendered in this trial was surely unattributable to the error.” Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).
Accordingly, the decision below is reversed, the respondent’s conviction and sentence are reinstated. Because the majority opinion addressed only the first three of respondent’s assignments of error, this case is remanded to the court of appeal for consideration of respondent’s remaining assignments of error.
JUDGMENT REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED TO THE COURT OF APPEAL.
VICTORY, J., concurs.

. Retired Judge Robert L. Lobrano, assigned as justice pro tempore, participating in the decision.